## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **TEAM KENNEDY,** | : |
| | : **Civil Action No** _____ |
| **Plaintiff,** | : |
| | : **COMPLAINT** |
| **vs.** | : |
| | : |
| **SHENNA BELLOWS, in her official** | : |
| **capacity as the Maine Secretary of State** | : |
| | : *Filed Electronically* |
| **Defendant.** | : |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Team Kennedy (hereinafter "Plaintiff," or "Team Kennedy," or "Kennedy Campaign") by and through undersigned legal counsel, brings this action against Defendant Sheena Bellows, in her official capacity as the Maine Secretary of State (hereinafter "Defendant," or "Secretary Bellows") seeking emergency preliminary and prospective permanent declaratory and injunctive relief with respect to: (1) the unconstitutional enforcement of Defendant's sudden ban on third party and independent candidates from collecting petition signatures at the polls on March 5, 2024, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) Defendant's unlawful enforcement and/or interpretation of ME. REV. STAT. ANN, tit. 21-A §682 (hereinafter the "Statute") seeking to ban the collection of ballot access petition signatures for candidates not on the primary election day ballot, and for the

1

election of an office also not on the primary election day ballot in direct violation of authority granted to her under the Statute; or, in the alternative (3) the January 1st start date for independent and third-party presidential candidates to begin collecting ballot access petition signatures for their slate of presidential electors, imposed under ME. REV. STAT. ANN, tit. 21-A §354 (6) is unconstitutional as it prevents them from collecting ballot access petition signatures inside polling locations during the conduct of the preceding general election as party candidates are permitted to do.

I.     **INTRODUCTION**

1.     Defendant, the Maine Secretary of State, is out of control, exposing herself as a Democrat partisan hack, disinterested in the rule of law, basic constitutional protections, in favor of peacocking around as the lap dog of an incompetent, desperate, senile President, whose political team has apparently issued Defenant instructions from the White House to clear Maine's 2024 general election ballot from any opposition that might threaten to deprive Joe Biden of Maine's 4 electoral college votes – Constitution be damned.

2.     Defendant permitted candidates seeking the presidential nomination of the Republican and Democratic parties to collect signatures on their ballot access petitions, inside polling locations during the November, 2023, general

election, on tables provided by the State, to secure ballot access for Maine's March 5, 2024, primary election.

3. In fact, Maine has historically permitted prospective candidates to collect petition signatures inside polling locations, on tables provided by the State, as a matter of course during both the primary and general election.

4. In 2020, the Green Party presidential candidate was permitted to collect petition signatures inside polling locations on primary election day 2020, for their presidential candidate, on tables provided by the State, and reports collecting about 9,000 signatures on that single day.

5. Prior to February 12, 2024, Plaintiff's state organizers were instructed that they would, in fact, be permitted to collect petition signatures for Robert F. Kennedy Jr.'s, slate of presidential electors inside polling locations during the March 5th primary election, on tables provided by the State, because (as is always the case with candidates seeking the collection of ballot access petitions) the candidate was not on the primary election ballot.

6. On or about February 12, 2024, town clerks were suddenly informed by the Secretary of State that town clerks were not to allow those with presidential nomination petitions to collect petition signatures at their primary polling locations as it somehow threatened (without explanation, as to how) to unduly influence the voters.

7.     Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Defendant may not permit political party presidential candidates to collect petition signatures necessary to secure ballot access inside polling locations, on tables provided by the state, and then forbid independent and third-party presidential candidates to also collect petition signatures necessary to secure ballot inside polling locations, on tables provided by the state.

8.     Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Defendant may not enforce the Statute, and the Statute may not, permit political party presidential candidates to collect ballot access petition signatures inside polling locations, on tables provided by the State, at the general election, and then prohibit independent and third-party presidential candidates from collecting ballot access petition signatures for their slate of presidential electors inside the primary polling locations, for the same 2024 election cycle.

9.     Once Defendant permitted presidential candidates for political parties to collect their ballot access petition signatures for the election of delegates to their parties' national nominating conventions inside polling locations, under the Equal Protection Clause, Defendant, without regard to the Statute, cannot forbid the same right to collect ballot access petition signatures to independent and third-party

4

presidential candidates seeking to gain access to the general election ballot for their slate of presidential electors.

10.     If the foregoing is not correct, then the ban on collecting petition signatures for independent and third-party presidential candidates until January 1st of a presidential election year is itself unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as it prevents independent and third-party presidential candidates the benefit of collecting ballot access petition signatures inside polling locations at the same time and on the same basis as political party presidential candidates at the preceding general election.

11.     The Statute permits certain enumerated activities to be prohibited at the polls on election day.

12.     The Statute has never been enforced to ban the collection of ballot access petition signatures inside polling locations during the general or primary elections.

13.     In fact, the Statute only prohibits a person, within 250 feet of the entrance to the voting place as well as within the voting place itself to: "Influence, or attempt to influence, another person's decision regarding a candidate for an office or question that is on the ballot for the election that day."

14.    The collection of ballot access petitions for an independent presidential candidate's slate of presidential electors for the general election means that none of the petition signatures are for a candidate on the ballot for the election that day.

15.    Further, the collection of ballot access petition signatures for slates of presidential electors for independent presidential candidates to appear on the general election is not an office on the ballot on the day of the March 5th primary election.

16.    The March 5th primary election is for the election of political party delegates to national party conventions to nominate presidential candidates, and not for the election of presidential electors which is express purpose of the Maine "Non-Party Nomination Petition – Slate of Presidential Electors" (attached hereto as Exhibit A) establishing the purpose of the petition to be for the nomination of a slate of presidential electors.

17.    It is beyond the laugh test to argue that the collection of ballot access petition signatures for independent and third-party presidential electors can in any way be properly interpreted as either influencing or attempting to influence the casting of votes for delegates to the national political party nominating conventions, or that the primary election on March 5th in any way implicates the office of presidential elector which is clearly not on the March 5th primary election

ballot, as major party presidential candidate are not required to name their

presidential electors until after the national political party nominating conventions

have concluded but which are required (in, frankly an unconstitutional manner, not

at issue in this action) to be named and nominated on Maine's "Non-Party

Nomination Petition – Slate of Presidential Electors."

18.    Accordingly, Defendant's ban on Plaintiff from collecting ballot

access petition signatures inside polling location during the conduct of Maine's

March 5th primary election is both in violation of rights guaranteed to Plaintiff

under the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution and a violation of Defendant's authority under the Statute.

## II.    <u>JURISDICTION</u>

19.    Jurisdiction lies in this Court under 28 U.S.C. §1331, providing that

district courts shall have original jurisdiction over all actions arising under the

Constitution of the United States.  Moreover, jurisdiction lies under 42 U.S.C.

§§1983, 1988 and 28 U.S.C. §1343(a), the jurisdictional counterpart of 42 U.S.C.

§1983, as Plaintiff alleges violation of rights guaranteed under the First and

Fourteenth Amendments to the United States Constitution.

20.    Jurisdiction of this court to adjudicate pendent state law claims in this

action arise under 28 U.S.C. §1367(a), is authorized by Fed. R. Civ. P. 18(a) and is

mandatory under the doctrine of supplemental jurisdiction as set forth in *United*

*Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  The pendent state law claim in this action arises out of a common nucleus of operative facts as the federal questions advanced in this case under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the state law claim forms part of the same case or controversy.

## III.   VENUE

21.   Venue is proper in the United States District Court for the District of Maine under 28 U.S.C. §1391 as Defendant exercises her authority exclusively within this district and maintains her office within this district and all the operative acts and/or omissions have or will occur within this district.

## IV.   PARTIES

22.   Team Kennedy is the principal campaign committee to elect Robert F. Kennedy Jr., to the Office of President of the United States at the 2024 general election.  Team Kennedy is a registered campaign committee with the Federal Elections Commission.  Team Kennedy filed FEC Form 1, Statement of Organization on April 5, 2023.  Team Kennedy's FEC Committee I.D. Number is C00836916.  In order for Robert F. Kennedy Jr., to place his slate of presidential electors on the Maine general election ballot, Team Kennedy must collect and file 4,000 valid petition signatures, out of a maximum number of 5,000 signatures permitted to be filed, as well as other required documents, no later than August 1,

2024.  The address for Team Kennedy is: 124 Washington Street, STE 101, Foxborough, MA  02035.

23.     Defendant is Sheena Bellows, the Maine Secretary of State. Defendant is made a party to this action in her official capacity as the Maine Secretary of State.  Defendant is the principal election official for the state of Maine.  Plaintiff is required to file all documents to secure ballot access for the 2024 general election with Defendant. Defendant is charged with enforcing the statutory provisions challenged in this action.  Defendant's principal place of business with respect to Elections and Administration is: Nash School Building, 103 Sewall Street, 2nd Floor, Augusta, Maine 04333-0148.

## V.     <u>RELEVANT FACTS</u>

24.     Plaintiff incorporates, by reference, all the facts stated above in paragraphs 1 through 23, as if fully stated set forth herein.

25.     Robert F. Kennedy Jr. is an announced independent candidate for the Office of President of the United States for the 2024 general election.

26.     Plaintiff is Robert F. Kennedy Jr.'s campaign to win the 270 electoral college votes required to be elected the 47th President of the United States.

27.     Plaintiff is required to collect a minimum of 4,000 valid signatures on Maine's "Non-Party Nomination Petition – Slate of Presidential Electors", a form

required to be promulgated by Defendant, in order to place Robert F. Kennedy Jr's slate of presidential electors on Maine's 2024 general election ballot.

28.    However, Plaintiff is only permitted to file 5,000 petition signatures with the town clerks for validation.

29.    Only signatures from registered voters may be counted toward the minimum 4,000 valid signatures required to secure ballot access for Mr. Kennedy's slate of presidential electors for the 2024 general election.

30.    Accordingly, Plaintiff must collect signatures from as many registered voters as possible to make sure that 4,000 of the 5,000 collected signatures are from registered voters and subject to validation to secure ballot access for Mr. Kennedy's slate of presidential electors. ME. REV. STAT. ANN, tit. 21-A §354 (5)(A).

31.    Because only registered voters may sign Plaintiff's ballot access petition, and because Plaintiff may only file 5,000 raw petition signatures to secure the 4,000 valid signatures to necessary to guarantee ballot access for Mr. Kennedy's slate of presidential electors, it is very important that Plaintiff be permitted to collect ballot access signatures inside polling locations at the primary election held on March 5th because everyone exiting polling locations during a primary election are registered voters qualified to sign Plaintiff's ballot access petition.

32.     Plaintiff is only permitted to collect signatures on the "Non-Party Nomination Petition – Slate of Presidential Electors" from January 1, 2024, until July 25, 2024 (the deadline to submit petition signatures to municipal registrars for validation before filing with Defendant no later than August 1, 2024).  ME. REV. STAT. ANN, tit. 21-A §354 (6)

33.     As a result, Plaintiff was not permitted to collect petition signatures at the same time, inside polling locations, at tables supplied by the State, during the November 2023 general election as presidential political party candidates were permitted to do.

34.     The only election at which Plaintiff is lawfully permitted to collect ballot access petition signatures from established registered voters is the March 5th primary election.

35.     Defendant permitted petition circulators for Democratic presidential candidate Dean Phillips and Republican presidential candidates Doug Burgum, Vivek Ramaswamy and Ryan Binkley to collect signatures on their ballot access petition inside the polling locations, at tables provided by the state, during the conduct of the 2023 general election.

36.     Town clerks, prior to February 12, 2024, reported to Plaintiff's Maine campaign staff that they would, of course, be permitted to collect signatures on Plaintiff's ballot access petitions inside polling locations, on tables provided by the

state, during the conduct of Maine's 2024 primary election on March 5, 2024. *See*, Exhibit B.

37.     The town clerks explained to Plaintiff's campaign staff that because Mr. Kennedy was not on the ballot, it was permissible under the Statute for Plaintiff's petition circulators to collect petition signatures on ballot access petitions inside polling locations during the March 5th primary election. *See*, Exhibit B.

38.     Then, suddenly, on or about the afternoon of February 12th, town clerks reported to Plaintiff that Defendant had sent email instructions that town clerks were not to let those with presidential nomination petitions to collect petition signatures inside polling locations as it would unduly influence the voters (presumably in violation of the Statute). *See*, Exhibit B.

39.     In addition to the benefit of knowing that election day signers at polling locations are registered voters, thereby making the screening process quicker, professional petition circulators (because of the high validity rate of signatures collected at polling locations) charge roughly 50% of the normal per-signature rate – a savings to Plaintiff of approximately $22,500.00 (in order to file the maximum permitted number of 5,000 signatures, selected based on internal validation analysis, Plaintiff must collect about 7,500 raw signatures at about $7.00

per signature – a slightly less than a 50% reduction to $4.00 per signature on 7,500 raw signatures equates to a savings to Plaintiff of approximately $22,500.00).

40.     It is well established that under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution a state must provide the same or similar mechanisms to independent and third-party presidential candidates as to party candidates.

41.     Under the Equal Protection Clause, and without respect to the Statute, as soon as Defenant permitted political party candidates to collect ballot access petition signatures inside polling locations, on tables provided by the state, Defendant may not thereafter deny to Plaintiff the same mechanism to collect valid petition signatures from the registered voters flowing through polling locations at the March 5th primary election.

42.     Furthermore, Defendant's conduct is in violation of the Statute.

43.     The Statute provides, in relevant part:

Certain activities are prohibited on election day…. (2) Influence prohibited.  On public property within 250 feet of the entrance to the voting place as well as within the voting place itself, a person may not: (A) Influence another person's decision regarding a candidate for an office or question that is on the ballot for the election that day; or (B) Attempt to influence another person's decision regarding a candidate for an office or question that is on the ballot for the election that day.

44.    In relevant part, at the March 5th primary election, voters will, among other things, cast votes to send delegates to their respective national party conventions to support the nomination of the presidential candidate of their choice.

45.    Presidential electors are not on the March 5th primary election ballot.

46.    Plaintiff's "Non-Party Nomination Petition – Slate of Presidential Electors" as required by statute and Defendant's own petition form, establish that ballot access petitions circulated by independent and third-party presidential candidates is for the nomination of a slate of presidential elections – an office and candidates, not on the March 5th primary election ballot.

47.    Petition requirements for independent and third-party presidential candidates are governed by Section 354 of Maine's Election Code.  ME. REV. STAT. ANN, tit. 21-A §354 (1)(B) provides: "The names of presidential electors must be placed on the petition as a slate.  The names of the candidates for President and Vice President must be placed on a petition for the nomination of presidential electors."  *See also*, ME. REV. STAT. ANN, tit. 21-A §354 (5)(a) (again, establishing that independent presidential nomination petitions are for the purpose of nominating a "slate of candidates for the office of presidential elector").

48.    Accordingly, the petition Plaintiff is circulating in Maine is for the nomination of a slate of presidential electors – which is not an office or candidate(s) on Maine's March 5th primary election ballot

49.     Defendant's sudden ban on independent and third-party petition circulators collecting ballot access petition signatures for slates of presidential electors inside polling locations, on tables provided by the state, is also in violation of the Statute and exceeds Defendant's authority under the Statute.

50.     Plaintiff requests emergency injunctive relief and permanent injunctive and declaratory relief against Defendant's ban on independent and third-party presidential candidates from collecting ballot access petition signatures for their slates of presidential electors inside polling locations for the March 5th primary election on the same basis as the access permitted to political party candidates to collect signatures on their own ballot access petitions during the 2023 general election.

51.     Plaintiff has no adequate remedy at law for the unconstitutional conduct of Defendant challenged in this action.

52.     At all relevant times, Defendant is a state actor, as that term relates to 42 U.S.C. §1983.

## VI.    CAUSES OF ACTION

### COUNT I
### (Equal Protection Clause Violation)

53.     Plaintiff realleged and asserts all foregoing paragraphs as if fully set forth herein.

54.     Defendant has issue orders preventing town clerks to permit Plaintiff, an independent candidate for the Office of President of the United States, the same access to voters to collect valid ballot access petition signatures for Mr. Kennedy's slate of presidential electors inside polling locations, on tables provided by the state, during the conduct of Maine's March 5, 2024, primary election as that provided to presidential candidates for political parties during the conduct of the November, 2023 general election.

55.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires Defendant to provide the same or similar mechanisms as that provided to party candidates.

56.     Defendant's conduct as alleged herein denies to Plaintiff the same access to registered voters as that permitted by Defendant to party candidates seeking the nomination of their political party for the Office of President of the United States.

57.     Accordingly, Defendant's ban on independent and third-party presidential candidate from collecting ballot access petition signatures inside polling location, on tables provided by the state, violates rights guaranteed to Plaintiff under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiff demands the relief requested in this action.

## COUNT II
## (Alternative Equal Protection Violation)

58.     Plaintiff realleges and asserts all foregoing paragraphs as if fully set forth herein.

59.     ME. REV. STAT. ANN, tit. 21-A §354 (6), prohibits independent presidential candidates from collecting ballot access petition signatures for their slate of presidential electors before January 1st of a presidential election year.

60.     ME. REV. STAT. ANN, tit. 21-A §354 (6), thereby prevents independent and third-party presidential candidates from collecting ballot access petition signatures in Maine inside polling locations during the conduct of the preceding general election as presidential candidates for political parties are permitted to do.

61.     To the extent Defendant is permitted to ban independent presidential candidates from collecting ballot access petition signatures for their slate of presidential electors inside polling locations during the primary election of a presidential election year, then, the prohibition on collecting ballot access petition signatures for independent and third-party slates of presidential electors prior to January 1, 2024, is itself unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

62.     If Plaintiff can be banned from collecting ballot access petition signatures inside the polling locations, on tables provided by the state, during the conduct of the primary election during a presidential election year, then

17

independent and third-party presidential candidates must be permitted to collect petition signatures for their slate of presidential electors before January 1st of a presidential election year, so that they also can collect petition signatures inside the polling locations during the conduct of the preceding general election, just as political party candidates are permitted to do.

63.     As Defendant imposed her ban after January 1st, preventing Plaintiff from seeking relief for the 2023 general election, Plaintiff demands the right to collect petition signatures inside polling locations for the March 5th primary election as an equitable remedy, with the January 1st start date to collect ballot access petition signatures held unconstitutional for all future presidential elections.

64.     Accordingly, to the extent Defendant may deny independent presidential candidates from collecting ballot access petition signatures for their slate of presidential electors inside polling locations for the March 5th primary elections, ME. REV. STAT. ANN, tit. 21-A §354 (6) is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution for which Plaintiff demands the equitable relief requested in this action.

## COUNT III
### (Pendent State Law Claim)

65.     Plaintiff realleges and asserts all foregoing paragraphs as if fully set forth herein.

66.     The Statute does not prohibit independent and third-party presidential candidates from collecting ballot access petition signatures inside polling locations during the conduct of the primary election of a presidential election year because the office of presidential elector is not on the primary election ballot and none of the presidential electors or the named presidential or vice-presidential candidates seeking ballot access are on the March 5, 2024, primary election ballot.

67.     Accordingly, Defendant's ban on independent and third-party presidential candidates from collecting ballot access petition signatures for their slates of presidential electors inside polling locations during the March 5, 2024, primary election is in violation of the Statute for which Plaintiff demands the relief requested in this action.

## V.     <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Enter an Order preliminarily enjoining Defendant from communicating and enforcing a ban on independent and third-party presidential candidates from collecting ballot access petition signatures for their slates of presidential electors inside polling locations, on tables provided by the state, during the conduct of the March 5, 2024, primary election.

b.      Enter an Order directing Defendant to immediately, and within 24 hours of the Order, communicate the preliminary injunction and the permission to

be granted to Plaintiff to collect ballot access petition signatures for Mr. Kennedy's slate of presidential electors inside polling locations, on tables provided by the state, during the conduct of the March 5, 2024, primary election to all town clerks in the State of Maine and to send them a copy of this Court's Order as part of that required communication.

c.      Declare Defendant's ban on independent and third-party presidential candidates from collecting ballot access petition signatures for their slates of presidential electors inside polling locations, on tables provided by the state, during the conduct presidential election year primary elections in Maine unconstitutional.

d.      Permanently enjoin Defendant, and her successors in office, from banning independent and third-party presidential candidates from collecting ballot access petition signatures for their slates of presidential electors inside polling locations, on tables provided by the state, during the conduct presidential election year primary elections in Maine.

e.      IN THE ALTERNATIVE, declare ME. REV. STAT. ANN, tit. 21-A §354 (6) unconstitutional.

f.      IN THE FURTHER ALTERNATIVE, enjoin Defendant from enforcing ME. REV. STAT. ANN, tit. 21-A §354 (6) and Order Defendant to publish and permit signatures to be collected on the "Non-Party Nomination Petition –

Slate of Presidential Electors" at the same time ballot access petitions are provided and circulated by presidential candidates for political parties.

g.      Award Plaintiff the costs of this action together with their reasonable attorneys' fees and expenses pursuant to 42 U.S. C. §1988; and.

h.      Order any other relief that this Court may deem just and proper, and retain jurisdiction over this action.


Dated:  February 20, 2024                           **/s/ Stephen C. Whiting__**
                                                    Stephen C. Whiting, Esq.
                                                    Bar No. 559
                                                    THE WHITING LAW FIRM
                                                    75 Pearl Street
                                                    Suite 207
                                                    Portland, ME  04101
                                                    (207) 780-0681
                                                    mail@whitinglawfirm.com

                                                    **/s/ Paul A. Rossi_____**
                                                    Paul A. Rossi, Esq.
                                                    *Pro Hac Vice* Admission Pending
                                                    IMPG ADVOCATES
                                                    316 Hill Street
                                                    Suite 1020
                                                    Mountville, PA  17554
                                                    (717) 961-8978
                                                    Paul-Rossi@comcast.net